Filed 6/14/21  P. v. Lee CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091424 |
| Plaintiff and Respondent, | (Super. Ct. No. 99F02485) |
| v. | |
| KOU LEE, | |
| Defendant and Appellant. | |

Defendant Kou Lee appeals the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1]  He contends the trial court erred in (1) finding him ineligible for relief based upon a premature finding that the jury would have convicted him of second degree murder even if not presented with the natural and probable consequences theory of liability, and (2) considering the record of conviction as part of

---

[1]     Undesignated statutory references are to the Penal Code.

1

the section 1170.95, subdivision (c) inquiry. The People agree with defendant's first argument, and we concur with the parties that the trial court erred in failing to issue an order to show cause where the record of conviction did not establish defendant's ineligibility for relief as a matter of law. Accordingly, we will reverse and remand with directions for the trial court to issue an order to show cause.

BACKGROUND

A.     *The underlying conviction*

For expediency, we will incorporate relevant information from the unpublished opinion in defendant's prior appeal, *People v. Lee* (Aug. 31, 2005, C043992) [nonpub. opn.] (*Lee I*): "On December 9, 1998, Yeng was driving a car with his wife, Ann, sitting in the front passenger seat, and [defendant] sitting behind Ann in the back seat. Tong was also sitting in the backseat, behind Yeng. Statements by defendants after the shooting indicated they knew Tong had a gun with him.

"At one point as they were driving, [defendant] told Yeng to back up because he saw a person who had 'jumped' him. Yeng stopped the car and backed up, and [defendant] told Ann to roll down her window and pull her seat forward. Jin Dao Lee (the victim), a member of a street gang called Junior Rascal Boys (JRB), was standing on the porch of the house where they had stopped. Several months earlier, the victim had participated in an attack on [defendant], Tong and Tong's brother, Fue, which left [defendant] with a five-inch scar on his arm.

"[Defendant] yelled 'something about JRB' out of the window at the victim. While [defendant] was yelling, several gunshots were fired from the backseat of the car, fatally wounding the victim. Ann believed Tong fired the shots. [¶] The four drove off, eventually arriving at Tong's residence. Ann told a detective that, on the way to Tong's residence, Tong, [defendant] and Yeng laughed about the shooting.

"Two days after the shooting, a .22-caliber semiautomatic pistol containing Tong's fingerprints was recovered from the garage at his residence. A criminalist concluded that

2

spent cartridges recovered from the scene of the shooting had been fired from the recovered pistol." (*Lee I, supra*, C043992.)

Defendant and two codefendants were tried before a jury that found defendant guilty of second degree murder (§ 187, subd. (a)), discharging a firearm at a residence (§ 246), one count of maliciously discharging a firearm at a person who was not an occupant of a motor vehicle from a motor vehicle (§ 12034, subd. (c)), and one count of maliciously discharging a firearm from a motor vehicle (§ 12034, subd. (d)). (*Lee I, supra*, C043992.) The jury also found true numerous enhancements, including that defendant was a principal in the offense and at least one principal used a firearm (§ 12022.53, subds. (b), (c), (d) & (e)(1)) and that defendant committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). (*Lee I*, C043992.) The jury found not true the allegation that defendant was armed with a firearm. Having found defendant guilty of second degree murder, the jury did not reach the allegation against defendant[2] that "[t]he murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." (§ 190.2, subd. (a)(21).)

We upheld defendant's convictions on appeal, but reversed for lack of evidence of the firearm use and criminal street gang enhancements. (*Lee I, supra*, C043992.) Defendant's ultimate sentence after appeal was 15 years to life.

B.      *The section 1170.95 petition*

On January 18, 2019, defendant filed a form petition for resentencing pursuant to section 1170.95 alleging he had been convicted of second degree murder following a jury trial on either a felony murder or a natural and probable consequences theory and could not now be convicted thereof because of changes made to sections 188 and 189

---

[2]      This allegation was found true against at least one of defendant's codefendants. (*Lee I, supra*, C043992.)

eliminating aider and abettor liability. On March 1, 2019, the court issued orders appointing counsel, setting a briefing schedule, and inviting the parties to address the constitutionality of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which added section 1170.95 to the Penal Code and amended sections 188 and 189. Thereafter, the People moved to dismiss the petition, arguing that (1) Senate Bill 1437 was unconstitutional, and (2) defendant failed to make a prima facie showing of eligibility for relief. Defendant opposed the People's dismissal motion and filed a merits brief attaching a page of the clerk's transcript from defendant's trial as an exhibit.

On January 2, 2020, the trial court denied defendant's petition without issuing an order to show cause or holding an evidentiary hearing. The court's written ruling discussed the charges, jury instructions, jury findings, and appellate history. It then stated: "It appears that . . . the jury found defendant . . . guilty of second degree murder based on either an implied malice aforethought theory, or on the natural and probable consequences doctrine. The jury necessarily rejected an express malice theory when it acquitted defendant . . . of first degree murder, as in doing so it necessarily rejected the drive-by theory of first degree murder (first degree murder perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death) that was based on direct aider and abettor liability, which required that defendant . . . share the intent of the actual killer, the intent to inflict death."

Thereafter, the court discussed the facts as described in our previous appellate opinion and concluded that "[i]t appears to the court beyond a reasonable doubt that had the jury been instructed only on the malice aforethought theory of second degree murder, and not the natural and probable consequences doctrine, that defendant . . . still would have been convicted of second degree murder. Defendant . . . saw the victim, wanted the car stopped and backed up to where the victim was, wanted the window rolled down and the seat moved forward, and laughed after the shooting happened. Clearly, he intended

4

that either codefendant Tong shoot the victim, or that Tong hand him the gun and he himself shoot the victim, and that he did so with implied malice, that is, conscious disregard for the human life of the victim." The court therefore concluded that defendant was not entitled to relief under section 1170.95 because "the evidence shows beyond a reasonable doubt that he acted with implied malice, thus a jury 'could' have convicted him of second degree murder even under Penal Code §§ 188 and 189 as amended by SB 1437." Accordingly, defendant's petition was denied. Defendant timely appealed.

DISCUSSION

A.  *Legal Background*

Senate Bill 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, restricted the application of the felony-murder rule and the natural and probable consequences doctrine, as applied to murder, by amending sections 188 and 189. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248-249.) With regard to felony murder, before the enactment of Senate Bill 1437, "a defendant could be convicted of murder ' " 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony . . . .' " ' [Citation.] . . . '[F]elony-murder liability d[id] not require an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " (*People v. Lee* (2020) 49 Cal.App.5th 254, 261, fn. omitted, review granted July 15, 2020, S262459 (*Lee II*).) Senate Bill 1437 added section 189, subdivision (e) to now provide that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless

5

indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

Liability for murder under the natural and probable consequences doctrine was also eliminated by Senate Bill 1437 (2017-2018 Reg. Sess.). (*Lee II, supra*, 49 Cal.App.5th at p. 262, review granted July 15, 2020, S262459; *People v. Offley* (2020) 48 Cal.App.5th 588, 595 (*Offley*).) Natural and probable consequences and direct aiding and abetting were two forms of aider and abettor liability. (*People v. Chiu* (2014) 59 Cal.4th 155, 158 (*Chiu*); *People v. Chavez* (2018) 22 Cal.App.5th 663, 682-683.) Under the natural and probable consequences doctrine, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder, could be convicted of not only the target crime, but the resulting murder, irrespective of whether he or she harbored malice aforethought. (*Lee II*, at p. 261.) But Senate Bill 1437 amended section 188 to now provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2; *Lee II*, at p. 262.)

However, the criminal liability of direct aiders and abettors did not change under Senate Bill 1437 (2017-2018 Reg. Sess.). (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598 (*Lewis*); *Offley, supra*, 48 Cal.App.5th at pp. 595-596.) Such persons who by act or advice aid, promote, encourage or instigate the commission of murder, with knowledge of the direct perpetrator's criminal purpose and with intent to commit, encourage or facilitate the commission of murder, remain criminally liable for murder. (*Lewis, supra*, at p. 1135, review granted Mar. 18, 2020, S260598; *People v. Chavez, supra*, 22 Cal.App.5th at p. 682; accord, *Offley*, at pp. 595-596; see *Chiu, supra*, 59 Cal.4th at pp. 158, 161, 166-167, 171-172.)

Senate Bill 1437 (2017-2018 Reg. Sess.) also added section 1170.95, "which permits an individual convicted of felony murder or murder under a natural and probable

6

consequences theory to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of first or second degree murder because of Senate Bill No. 1437's changes to sections 188 and 189." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

Section 1170.95, subdivisions (b) and (c) create a three-step review process. (*People v. Perez* (2020) 54 Cal.App.5th 896, 903, review granted Dec. 9, 2020, S265254; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 974-981 (*Drayton*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177-1178, review granted June 24, 2020, S262011; *Verdugo, supra*, 44 Cal.App.5th at pp. 327-330, review granted Mar. 18, 2020, S260493; contra, *People v. Cooper* (2020) 54 Cal.App.5th 106, 118-123, review granted Nov. 10, 2020, S264684.) First, the trial court determines whether the petition is facially sufficient under section 1170.95, subdivision (b). (*Verdugo*, at pp. 327-328.) To do this, the trial court verifies that the petition contains the information required under section 1170.95, subdivision (b)(1), and supplies any missing information that can be readily ascertained from the record of conviction. (*Verdugo*, at pp. 327-328.) Section 1170.95, subdivision (b)(1) requires the following information: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] [And] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(A)-(C).) If any of the required information "is missing from the petition and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

If the petition is facially sufficient, then, in the second step, the trial court determines under section 1170.95, subdivision (c) whether the petitioner "has made a

7

prima facie showing that the petitioner falls within the provisions of this section."
(§ 1170.95, subd. (c).) To make this prima facie showing, the petitioner must demonstrate the following: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] [And] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

The Court of Appeal for the Second District, Division Seven, has described the second-step inquiry as "a preliminary review of statutory eligibility for resentencing, a concept that is a well-established part of the resentencing process under Propositions 36 and 47." (*Verdugo, supra*, 44 Cal.App.5th at p. 329, review granted Mar. 18, 2020, S260493.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner. [Citation.]" (*Ibid*.) In making this inquiry, the trial court may again examine "readily available portions of the record of conviction," including, "at least," the "complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Id*. at pp. 323, 329-330.) It also may consider jury instructions and any appellate opinion in the case. (*Id*. at pp. 330, fn. 9 & 334-336.)

If the trial court determines that the petitioner has made a prima facie showing that he or she falls within the provisions of section 1170.95, the trial court's evaluation proceeds to the third step, i.e., a "second prima facie review," in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the

8

parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo, supra*, 44 Cal.App.5th at pp. 328, 330, review granted Mar. 18, 2020, S260493.) In this second prima facie review, the trial court must take the petitioner's factual allegations as true and make a preliminary assessment whether he or she would be entitled to relief if the allegations were proved. (*Id.* at p. 328; see *Drayton, supra*, 47 Cal.App.5th at p. 980.)

"If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision (a)], then the trial court should issue an order to show cause. [Citation.] Once the trial court issues the order to show cause under section 1170.95[, subdivision (c)], it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, [subdivision] (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. [Citation.] Notably, following the issuance of an order to show cause, the burden of proof will shift to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. [Citation.]" (*Drayton, supra*, 47 Cal.App.5th at pp. 980-981.) Both the prosecution and the defense may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).)

B.    *Analysis*

Here, the trial court denied defendant's petition at the section 1170.95, subdivision (c) stage, having appointed counsel and received briefing as detailed above. The parties agree, and we concur, that this was error because the record does not demonstrate, as a matter of law, that defendant was ineligible for relief.[3] (*Drayton, supra*, 47 Cal.App.5th at pp. 980-981.)

---

[3]    To the extent defendant contends the trial court's review under section 1170.95, subdivision (c) is limited to the allegations in the petition, we disagree. Whether a trial

9

As noted in the court's written decision, the jury found defendant guilty of second degree murder on *either* an implied malice or natural and probable consequences theory. The jury was instructed on both theories, and there is no indication in the record that the jury relied on one, but not the other, in convicting defendant of second degree murder. Accordingly, the jury was presented with one theory under which defendant could no longer be convicted, making him potentially eligible for relief under Senate Bill 1437 (2017-2018 Reg. Sess.). (See *Lee II, supra*, 49 Cal.App.5th at p. 262 [elimination of natural and probable consequences doctrine], review granted July 15, 2020, S262459; cf. *Chiu, supra*, 59 Cal.4th at p. 167 ["[w]hen a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find the verdict was based on a valid ground"].)

It was inappropriate at the section 1170.95, subdivision (c) stage for the trial court to weigh the facts articulated in our previous appellate opinion and conclude beyond a reasonable doubt that defendant was ineligible because the jury would have convicted him on an implied malice theory even if not presented with the natural and probable consequences theory. (*Drayton, supra*, 47 Cal.App.5th at p. 980 [the trial court's "authority to make determinations without conducting an evidentiary hearing pursuant to

court may consider the record of conviction in the first prima facie review under section 1170.95, subdivision (c) is before the California Supreme Court in *Lewis, supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598. Pending guidance from our Supreme Court, we agree with the courts that have held it is proper for a trial court to consider the record of conviction in determining whether the petitioner has made a prima facie showing that he or she falls within the provisions of section 1170.95. (*People v. Tarkington, supra*, 49 Cal.App.5th at pp. 908-909, review granted Aug. 12, 2020, S263219; *Lee II, supra*, 49 Cal.App.5th at pp. 262-263, review granted July 15, 2020, S262459 *People v. Law* (2020) 48 Cal.App.5th 811, 820-821, review granted July 8, 2020, S262490; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674, review granted July 8, 2020, S262481; *People v. Torres, supra*, 46 Cal.App.5th at pp. 1177-1178, review granted June 24, 2020, S262011; *Verdugo, supra*, 44 Cal.App.5th at pp. 329-330, review granted Mar. 18, 2020, S260493; *Lewis,* at pp. 1137-1138.)

section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)"].)  This is an inquiry the court must conduct after issuing an order to show cause and holding an evidentiary hearing under section 1170.95, subdivision (d).  (*Drayton*, at pp. 980-981.)  Accordingly, we will reverse the judgment and direct the trial court to issue the order to show cause concerning defendant's petition.

DISPOSITION

The judgment is reversed.  The trial court is directed to issue the order to show cause on defendant's section 1170.95 petition for resentencing and otherwise continue with proceedings consistent therewith.


         KRAUSE         , J.


We concur:


        RAYE         , P. J.


        HOCH         , J.